**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 11-cr-00033-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

3.  NANCY MARCELA CASTRO-MOTTA,

    Defendant.

## ORDER GRANTING MOTIONS TO QUASH SUBPOENAS *DUCES TECUM*

**Blackburn, J.**

The matters before me are (1) the government's **Motion To Quash Subpoena Duces Tecum Issued By Court Order on April 4, 2012 to The Drug Enforcement Administration** [#313][1] filed April 25, 2012; and (2) **Third Party American Society of Crime Laboratory Directors/Laboratory Accreditation Board's Motion To Quash Defendant Castro-Motta's Subpoena *Duces Tecum*** [#325] filed May 8, 2012. I heard oral arguments on these motions on July 11, 2012.

In fashioning my ruling, I have considered all relevant adjudicative facts in the file and record of this case. I have considered all facts to which there is no express or implied objection. I have considered, but not necessarily accepted, the reasons stated, arguments advanced, and authorities cited by counsel in their papers and during oral arguments. I now grant the motions.

---

[1] "[#313]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

Defendant Nancy Castro-Motta is charged in a two-count Indictment with (1) aiding and abetting the distribution or possession with intent to distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine; and (2) conspiracy to distribute or possess with intent to distribute same.  In support of its burden to demonstrate that the substance contained a detectable amount of methamphetamine, the government has proffered the testimony of Brittany Huntington, a forensic chemist with the Drug Enforcement Administration's ("DEA") Western Regional Laboratory.  (**Government's Disclosure of Expert Regarding Drug Analysis** [#102], filed April 4, 2011.)  The Western Regional Laboratory has been accredited by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board ("ASCLD/LAB") since 1994.[2]  The lab's accreditation has been reviewed and renewed by ASCLD/LAB every five years since that time.  Most recently, the Western Regional Laboratory sought reaccreditation in March 2009, and its accreditation was renewed effective February 26, 2010.

On April 4, 2012, I granted Ms. Castro-Motta's *ex parte* motion for the issuance of subpoenas *duces tecum* to the Department of Justice, the DEA, and ASCLD/LAB.  (*See* [#289], filed April 4, 2012.)  The subpoena served on ASCLD/LAB seeks "all documents" related to the Western Regional Laboratory's accreditation.  Those served on the government seek all documents submitted to ASCLD/LAB in connection with the accreditation, as well as documents related to a plethora of other matters, including:

---

[2] The lab was originally accredited under ASCLD/LAB's Legacy Program.  Since 2005, it has been accredited under the ASCLD/LAB-International Accreditation Program, which is based on internationally adopted standards.

auditing of the Western Regional Lab's drug testing equipment; evidence handling and chain of custody procedures; numerous DEA laboratory manuals and quality assurance plans; concerns raised in 2004 by the Office of Inspector General regarding the Western Regional Laboratory's ventilation system; and Ms. Huntington's professional responsibilities, chain of command, and evaluations.  By these motions, ASCLD/LAB and the government move to quash these subpoenas.

The issuance of subpoenas in a criminal case is governed by Rule 17 of the Federal Rules of Criminal Procedure.  Rule 17(c), which governs the issuance of subpoenas *duces tecum*, provides that "[a] subpoena may order the witnesses to produce any books, papers, documents, data, or other objects the subpoena designates."  **FED. R. CRIM. P.** 17(c)(1).  However, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  **FED. R. CRIM. P.** 17(c)(2).

To determine whether a particular subpoena comes within the ambit of Rule 17(c)(2), the United States Supreme Court has articulated a quadripartite test:

> Under this test, in order to require production prior to trial, the moving party must show:  (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

***United States v. Nixon***, 418 U.S. 683, 699-700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974).  In applying the ***Nixon*** factors, federal courts have distilled them to three

essential elements: "(1) relevancy; (2) admissibility; [and] (3) specificity." ***United States v. Morris***, 287 F.3d 985, 991 (10th Cir.), ***cert. denied***, 122 S.Ct. 2612 (2002). The burden is on the party requesting the subpoena to demonstrate that each of these requirements is satisfied. ***United States v. Bartkowicz***, 2010 WL 3733552 at * 1 (D. Colo. Sept. 17, 2010). Analyzing each of these factors *seriatim*, I find that Ms. Castro-Motta has failed to sustain her burden of proof as to any of them.[3]

The requirement of relevance serves to ensure that a subpoena is not used to circumvent Rule 16.[4] ***See Nixon***, 94 S.Ct. at 3103; ***see also United States v. Abdush-Shakur***, 465 F.3d 458, 467 (10th Cir. 2006) ("Rule 17(c) is not intended to provide an additional means of discovery, but to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."), ***cert. denied***, 127 S.Ct. 1321 (2007) (citation and internal quotation marks omitted). To demonstrate relevance, Ms. Castro-Motta must show that the evidence she seeks would demonstrate the absence of one or more of the essential elements of the crimes with which she is charged. ***See United States v. Love***, 2010 WL 1931021 at *1 (D. Colo. May 13, 2010).

The vague, global requests set forth in these subpoenas are patently inadequate to satisfy Ms. Castro-Motta's burden of proof. Nothing in the materials requested would

---

[3] The government urges additionally that the subpoena also may be quashed for Ms. Castro-Motta's failure to first satisfy the requirements of the Department of Justice's ***Touhy*** regulations. In light of my determination of the substantive issues, however, these arguments are moot.

[4] Indeed, I have already twice denied similar requests by Ms. Castro-Motta for this and other closely related evidence. (***See* Order Re: Motion for Additional Discovery** [#248] filed November 1, 2011; **Order Re: Fed. R. Evid. 702 Submissions** [#256] filed November 17, 2011.)

4

make it more or less likely that the substance tested was methamphetamine because nothing therein suggests that any of the alleged deficiencies or lapses infected the actual testing conducted by Ms. Huntington.[5]  **See United States v. Gonzalez-Acosta**, 989 F.2d 384, 388-89 (10th Cir. 1993) (upholding denial of request for training, veterinary, and false-positive/false-negative alert records, among other documents, of drug-sniffing dog, on basis that historical errors in the dog's record were irrelevant where the dog was certified on the day it alerted correctly to presence of contraband in defendant's vehicle); **United States v. Gomez-Paz**, Criminal Case No. 10-cr-00567-MSK, **Reporter's Transcript** at 12:7-11 [#240], filed August 25, 2011 (granting motion to quash nearly identical subpoena *duces tecum*; only relevant question was whether forensic chemist's methodology was reliable for determining existence of methamphetamine, and questions bearing on accreditation or lab's compliance with protocols did not "bear on this issue at all.")  As I have advised Ms. Castro-Motta previously, her attempts to reason from the general to the specific in the manner contemplated by these subpoenas is impermissible.  (**See Order Re: Motion for Additional Discovery** at 6 [#248], filed November 10, 2011.)  **See also Gonzalez-Acosta**, 989 F.2d at 388-89; **United States v. Louis**, 2005 WL 180885 at *1, *5 (S.D.N.Y. Jan. 27, 2005).

---

[5] Moreover, and contrary to Ms. Castro-Motta's arguments, the presence or absence of these documents does not implicate her rights under the Confrontation Clause.  Ms. Huntington will be available for cross-examination.  The Confrontation Clause requires no more.  **See Pennsylvania v. Ritchie**, 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (right to cross-examine "does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony") (footnote omitted).

Ms. Castro-Motta's requests also fail the admissibility prong of the **Nixon** test. "[O]nly materials that are 'admissible as evidence' are subject to subpoena under . . . [R]ule [17]." **United States v. Cuthbertson**, 651 F.2d 189, 192 (3rd Cir.), **cert. denied**, 102 S.Ct. 604 (1981). Accordingly, documents sought merely for the purpose of impeachment are not subject to production under Rule 17(c). **See Nixon**, 94 S.Ct. at 3104; **United States v. Wittig**, 250 F.R.D. 548, 553-54 (D. Kan. 2008). Construed generously, the documents sought are useful principally to undermine the reliability and credibility of both the Western Regional Lab and Ms. Huntington – in other words, for impeachment. The documents therefore are not "admissible as evidence" as that term is used and construed in **Nixon** and its progeny.

Finally, the subpoenas are insufficiently specific to withstand the motions to quash. Under this prong of the **Nixon** test, "the party requesting the information [must] identify the item sought and what the item contains, among other things." **Morris**, 287 F.3d at 991. "Specificity is the most difficult hurdle to overcome. The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." **Wittig**, 250 F.R.D. at 552 (footnotes, citations, and internal quotation marks omitted).

Far from requesting specifically identified documents, the subpoenas here rely on the broadest and most general of terms, *e.g.*, "any," "all," and "other documents." **See Morris**, 287 F.3d at 988. Taking the language of the subpoenas together with counsel's arguments in response to the motions and at the hearing, it is clear to this court that Ms. Castro-Motta has only the most speculative notion of what may be contained in the

6

documents she has requested.  Indeed, it seems clear that Ms. Castro-Motta, in many respects, cannot "verify whether the requested material even exists."  **Morris**, 287 F.3d at 991.  **See also United States v. Tokash**, 282 F.3d 962, 971 (7th Cir.), **cert. denied**, 122 S.Ct. 2344 (2002) (Rule 17(c) "allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial").[6]  In sum, it appears that nothing but Ms. Castro-Motta's own suspicions and conjectures substantiate any suggestions that the testing procedures performed by Ms. Huntington in this case were substandard or produced unreliable or inaccurate results.[7]

Accordingly, Ms. Castro-Motta has failed to satisfy her burden to rebuff the motions to quash.  Not only is this result compelled by applicable legal precedent, but by compelling policy concerns as well.  ASCLD/LAB is a not-for-profit institution that relies heavily on a network of trained volunteers to evaluate the 385 laboratories that seek accreditation through its auspices, largely on a voluntary basis.  For the accreditation process to be effective – and thus to improve the overall quality of the laboratories' processes and procedures over time – ASCLD/LAB commits to respect the confidentiality of the subject laboratories.  Access via subpoena to the information sought by these subpoenas undoubtedly would chill laboratories' willingness to seek professional accreditation, an outcome that ultimately would disserve both the interest

---

[6] The affidavit of Ms. Castro-Motta's putative expert, Janine Arvizu, adds nothing to the calculus. Ms. Arvizu essentially states that the specific categories of documents necessary for her review are requested by the subpoenas.  Such tautological reasoning does not, by mere force of an expert's *ipse dixit*, make the requests sufficiently specific for purposes of Rule 17.

[7] Nor does plaintiff's uncircumstantiated accusation that ASCLD/LAB has a "history of fraud" cast doubt on the testing performed in this case.

of criminal defendants and the public at large.  This court refuses to countenance such an absurd and unnecessary result.

THEREFORE, IT IS ORDERED as follows:

1.  That the government's **Motion To Quash Subpoena Duces Tecum Issued By Court Order on April 4, 2012 to The Drug Enforcement Administration** [#313], filed April 25, 2012, is **GRANTED**;

2.  That **Third Party American Society of Crime Laboratory Directors/Laboratory Accreditation Board's Motion To Quash Defendant Castro-Motta's Subpoena *Duces Tecum*** [#325], filed May 8, 2012, is **GRANTED**;

3  That the subpoenas *duces tecum* issued pursuant to this court's *ex parte* order [#289], filed April 4, 2012, are hereby **QUASHED**.

Dated August 15, 2012, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge